1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARIA DE LA PAZ NAVARRO DE              Case No.  1:21-cv-01697-JLT-BAM
     RODRIGUEZ o/b/o GILBERTO
12   RODRIGUEZ ALVAREZ,
                                             **FINDINGS AND RECOMMENDATIONS**
13                                           **REGARDING PLAINTIFF'S MOTION FOR**
                    Plaintiff,               **SUMMARY JUDGMENT OR REMAND**
14
            v.                               (Docs. 20, 21)
15
16   MARTIN O'MALLEY, Commissioner of        FOURTEEN-DAY DEADLINE
     Social Security,[1]
17
                    Defendant.
18

19                       **Findings and Recommendations**

20                              **INTRODUCTION**

21        Plaintiff Maria De La Paz Navarro De Rodriguez o/b/o Gilberto Rodriguez Alvarez[2] seeks

22   judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying

23   Plaintiff's application for disability insurance benefits under Title II of the Social Security Act.  The

24

25   _____

26   [1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d)
     of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

27   [2] Prior to filing the instant action, Maria De La Paz Navarro was substituted as a party upon the death of the
     claimant, Gilberto Rodriguez Alvarez.  AR 9-14. For ease of understanding, and unless otherwise noted, the
28   Court will refer generally to claimant as "Plaintiff."

                                  1

matter is currently before the Court on Plaintiff's motion for summary judgment and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's motion for summary judgment and granting the Commissioner's request to affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on September 21, 2018. AR 209-10, 211-14.[3] Plaintiff alleged that he became disabled on May 23, 2018, due to liver cirrhosis, back pain due to damaged lumbar disks, pre-diabetes, neck nerve damage, limited use of shoulders due to rotator cuff surgery, inflammation of the right leg, left leg numbness, fatigue, and stress. AR 244. The application was denied initially and on reconsideration. AR 96-100, 101-05. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Rebecca LaRiccia issued an order denying benefits on September 29, 2020. AR 21-40, 46-66. Thereafter, Plaintiff sought review of the decision, which the Appeals Council denied, making ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Relevant Hearing Testimony

ALJ LaRiccia held a telephonic hearing on September 1, 2020. Plaintiff appeared with his attorney, Jonathan Pena, and testified with the assistance of an interpreter. Ashley Bryars, an impartial vocational expert, also appeared and testified. AR 27, 48.

At the time of the hearing, Plaintiff was 52 years old. He completed the sixth grade in Mexico, and came to the United States in 1986. Plaintiff testified that he last worked in September 2019. He was unable to work because of pain and cramping in his hands. AR 51-52. He was given medication

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

for his hands and for his feet because of cramps in his legs.  He rated his pain as eight or nine out of ten on an average day.  He used massage and ice to reduce pain, not medication.  He took Tylenol for headaches.  AR 54-56.

Plaintiff further testified that he walked for five to ten minutes for exercise.  His doctors were still watching him for the liver transplant list.  He followed up with them every six months.  He reported knee pain due to an injury, which would need surgery.  AR 56.

When asked about his activities on an average day, Plaintiff testified that he rotated between standing and sitting, staying in one position for about five to ten minutes depending on pain.  He did not cook because of pain and cramps in his hands.  He did not drive, but did bathe and dress himself.  His sleep was interrupted by leg pain and stomach pain.  AR 56-58.

In response to questions from his attorney, Plaintiff testified that his back pain had worsened.  His damaged discs had gotten further damaged, which he knew because his legs had gone numb.  He rated his back pain as nine on a scale of one to ten.  AR 58. To make his back pain better, he tried massages and lying down for five to ten minutes about five or six times a day.  Plaintiff also testified that cramps related to liver issues were the worst symptom that prevented him from working.  His fatigue also had worsened.  He had difficulties with concentration, focusing only for five to ten minutes.  AR 58-60.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE characterized Plaintiff's past work as lawn sprinkler installer and lab tester.  AR 61.  The ALJ asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to assume a person 52-years-old, with a fifth-grade education and Plaintiff's work history.  This person could perform work at the light range of exertion.  This person could occasionally climb, frequently balance, and occasionally stoop, kneel, crouch, and crawl.  The VE testified that this person would be able to perform Plaintiff's past work as a lab tester.  AR 61-62.

For the second hypothetical, the ALJ asked the VE to add that the person could stand and walk for no more than four hours out of an eight-hour workday.  The VE testified that this would not allow for the lab tester work.  AR 62.  However, there would be other work that such a person could perform, such as cashier II, merchandise marker, and collator operator.  AR 62.

For the third hypothetical, the ALJ asked the VE to add that the individual would need an additional 20-minute break beyond the normal morning, afternoon, and lunch breaks.  The VE testified that this would not allow for competitive work.  AR 63.

For the fourth hypothetical, Plaintiff's counsel asked the VE to consider the first hypothetical and add that the individual would need to elevate his lower extremities to chest level four times throughout the workday for a least two hours out of the day.  The VE testified that there would not be any past work.  The VE explained that elevating the legs in the workplace is generally only tolerable to about seat height.  AR 63.

For the fifth hypothetical, Plaintiff's counsel asked the VE to consider the second hypothetical and add that the individual would require a sit-stand option, alternating every ten to fifteen minutes.  The VE testified that if, in alternating positions at that frequency, the capacity to perform work fell 15% below the average worker performing the same work, then the person would not be able to maintain competitive employment.  AR 63-64.

For the final hypothetical, Plaintiff's counsel aske the VE to consider the individual in the first hypothetical who would be absent three days in an average month.  The VE testified that if the absences were unscheduled or unexcused, then there would be no competitive work.  AR 64.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 27-40.  Specifically, the ALJ determined that Plaintiff had not engaged in substantial activity since May 23, 2018, the alleged onset date.  AR 29-30.  The ALJ identified the following severe impairments:  cirrhosis of the liver, primary biliary cholangitis, gastropathy, obesity, degenerative spondylosis lumbar spine, and meniscal tear of the right knee.  AR 30-31.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 31-32.

4

1    Based on a review of the entire record, the ALJ found that through March 9, 2020, Plaintiff

2 retained the residual functional capacity ("RFC") to perform light work, except he could occasionally

3 climb, frequently balance, and occasionally stoop, kneel, crouch, and crawl.  As of March 10, 2020,

4 however, Plaintiff's RFC was reduced to the same limitations, but also a limitation to standing and/or

5 walking no more than four hours out of an eight-workday.  He also could sit six hours in an eight-hour

6 workday.  AR 32-38.  With this RFC, the ALJ found that Plaintiff was capable of performing his past

7 relevant work as a lab tester before March 10, 2020.  AR 38.  However, as of March 10, 2020, Plaintiff

8 was unable to perform any past relevant work, but there were jobs that existed in the national economy

9 that Plaintiff could perform, such as cashier II, merchandise marker, and collator operator.  AR 39-40.

10 The ALJ therefore concluded that Plaintiff had not been under a disability from May 23, 2018, through

11 the date of the decision.  AR 40.

12                                 **<u>SCOPE OF REVIEW</u>**

13    Congress has provided a limited scope of judicial review of the Commissioner's decision to

14 deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

15 Court must determine whether the decision of the Commissioner is supported by substantial evidence.

16 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

17 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

18 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

19 adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be

20 considered, weighing both the evidence that supports and the evidence that detracts from the

21 Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

22 evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,*

23 *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

24 determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

25 and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

26 *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

27 ///

28 ///

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[4]

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints.  (Doc. 20 at 3.)  Plaintiff also contends that logical errors rendered the RFC unsupported by substantial evidence, including the failure to articulate the weight given to various medical sources and relying on outdated medical opinions.  (*Id.* at 16-18.)

**A.  Subjective Testimony**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his subjective complaints.  (Doc. 20 at 15.)  Specifically, Plaintiff argues that the ALJ failed to set forth reasons for discounting Plaintiff's complaints of symptoms related to chronic liver disease, including edema, leg cramping, and fatigue.  (Doc. 20 at 13-15.)

In deciding whether to accept a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted his statements concerning the intensity, persistence and limiting effects of those symptoms. AR 33. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ determined that Plaintiff's allegations were not consistent with the objective evidence. AR 35. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ indicated that the record was consistent with Plaintiff's ability to perform a range of work at the light exertional level. The ALJ explained:

> The claimant's allegations are not consistent with the objective evidence. The record is consistent with the claimant's ability to perform a range of work at the light exertional level. For example, despite the claimant's impairments, the record indicated he had no temporal muscle wasting or muscle weakness. He was able to move all four extremities with good or equal strength (15F/4, 5, 95; 1F/4) The claimant did not seek specialized treatment for his degenerative disc disease, such as injections, physical therapy, or pain management. While the claimant had reduced strength and range of motion at an examination in August 2018, a subsequent examination did not note any abnormalities. (8F/7, 11) He only had a single exacerbation requiring emergent treatment during the relevant timeframe. (17F/16) At his consultative examination, the claimant could get on and off the chair and exam table, take his shoes and socks off, walk on toes and heels, and had 5/5 strength. (10F) While the claimant tore his meniscus, his residual functional capacity accounts for his tear by limiting his standing and walking to four hours per day as of March 10, 2020. (14F/1-2).

AR 35-36.

Plaintiff does not challenge this portion of the ALJ's evaluation, noting only that the ALJ "concluded that the objective evidence regarding the lumbar spine disorder was consistent with the ability to perform light work." (Doc. 20 at 13.) Plaintiff instead challenges the ALJ's evaluation by

claiming that the ALJ failed to set forth reasons "for discounting Plaintiff's complaints of symptoms related to chronic liver disease," including "chronic lower extremity edema and cramping . . . ."[5]  (*Id.*)

Contrary to Plaintiff's assertions, the ALJ expressly considered and accounted for Plaintiff's edema.  AR 33-34.  Indeed, Plaintiff concedes that the ALJ considered "issues with edema," but argues that there was a "failure in fact finding" because "the record is rife with evidence plaintiff suffered from both edema and cramping of the lower extremities to a degree far greater than that characterized by the ALJ."  (*Id.*)  As an example, Plaintiff contends that the ALJ "cites to one entry where edema is noted, and at that she characterizes it as 'trace,' in an attempt to minimize the chronicity of the symptoms."  (*Id.*)  This example is not persuasive.

In his decision, the ALJ indicated that Plaintiff "had some trace edema in September 2018," citing physical examination findings of "Trace pedal edema."  *See* AR 33, citing Ex. 1F/4 [AR 334].  The ALJ also indicated that Plaintiff "had mild or trace edema in subsequent records," citing record evidence of moderate control with medication and examination findings of "[t]race edema."  AR 33-34, citing Exs. 6F/3 [AR 474]; 15F/74 [AR 691 ("Edema:  Moderately controlled on 40 mg lasix and 50 mg of aldactone daily")], 95 [AR 712 ("Trace edema of the right more than left.")].  Although Plaintiff criticizes the ALJ for characterizing his edema as "mild" and "trace," the ALJ merely reiterated the characterization used by Plaintiff's medical providers.  Further, Plaintiff's own citations to the medical evidence include reference to mild or trace edema.  (*See* Doc. 20 at 13, citing AR 437 ("Mild pitting edema bilateral +1"); 334 ("Trace pedal edema"); 502 ("Demonstrated mild bilateral lower extremity edema"); 712 ("Trace edema of the right more than left").)

 Plaintiff further argues that "a review of the record shows that at nearly every exam edema ranging from 1+ to 2+ is present" and that his chronic edema was non-responsive to medication therapy.  (Doc. 20 at 13.)  However, despite notations in the record of 2+ edema in January, March and August 2019 (AR 685, 817, 733), treatment records cited by Plaintiff also showed trace edema in March 2019 (AR 712) and no edema in February 2020 (AR 33, 596).  (*Id.*)  Additionally, as noted by

---

[5] Plaintiff also claims the ALJ failed to set forth reasons for discounting his complaints of exertion-limiting fatigue.  (Doc. 20 at 13.)  This argument is addressed in a subsequent section of these findings and recommendations.

the ALJ, there was an indication in the record that Plaintiff's edema was at least moderately controlled with medication. AR 35, 691.

Plaintiff further asserts that the ALJ "failed to offer a clear and convincing reason for rejecting his complaints that [his chronic lower extremity edema] precluded prolonged standing and walking and required leg elevation throughout the course of a workday." (Doc. 20 at 13-14.)  However, Plaintiff does not offer support in the record to demonstrate that his edema limited his ability to stand and walk.  Plaintiff himself testified or reported that his limited ability to stand and walk was due to pain.  AR 56-57, 58-59; *see also* Doc. 20 at 5 ("He reported that he was trying to walk, as recommended, but that his ability to walk was limited by his back pain.") (citing AR 333).  Plaintiff also does not offer support (or a citation) in the record to demonstrate that any physician recommended Plaintiff elevate his legs due to edema.

Plaintiff additionally claims that the ALJ failed to account for his leg cramps related to his liver disease, asserting that the record is rife with evidence that he suffered from cramping of the lower extremities to a degree far greater than that characterized by the ALJ. (Doc. 20 at 13.)  This argument also is not persuasive.

Plaintiff provides no substantive argument and no supporting citations to the medical record.[6] The Court notes that in Plaintiff's summary of the medical evidence, he references complaints of "excruciating" leg cramps. (*See* Doc. 20 at 8, citing AR 901-02.)  However, Plaintiff attributed those cramps to "taking Lasix," he was in no acute distress on examination, and he was prescribed only over-the-counter TheraWorx Foam Cream and Magnesium for those cramps.  AR 901-02.  Additional medical records cited by Plaintiff also show that magnesium oxide was prescribed for leg cramps. (*See* Doc. 20 at 9, AR 753-55,762-63, 889.)  Plaintiff appears to suggest that he reported limitations in standing and walking due to his leg cramps (*see* Doc. 20 at 10, citing AR 762, 889), but the cited records in Plaintiff's summary do not support this suggestion.  In fact, in one of the cited records, Plaintiff attributed limitations in prolonged standing and walking to his left ankle, wherein the

---

[6] The Commissioner asserts that Plaintiff has provided no medical record support for his supposition that his alleged cramps were related to cirrhosis.  (Doc. 13 at 25, n.9.)

1    provider noted, "Hidden agenda, completing Interview and exam, request I exam Left Ankle.  Claims

2    prolong standing or Walk causes Ankle to hurt more.  No swelling, bruise, redness or heat."  AR 889.

3        As a second reason for discounting Plaintiff's subjective complaints, the ALJ considered that

4    Plaintiff did not seek specialized treatment for his degenerative disc disease, such as injections,

5    physical therapy, or pain management, noting only a single exacerbation requiring emergent treatment

6    during the relevant timeframe.  AR 35.  A limited course of treatment sometimes can justify the

7    rejection of a claimant's subjective complaints.  *Tracy E. W. v. O'Malley*, No. ED CV 23-1288-E,

8    2024 WL 130122, at *6 (C.D. Cal. Jan. 11, 2024) (citing cases); *Brandi T. v. Kijakazi*, No. CV 21-

9    4120-E, 2022 WL 16894519, at *4 (C.D. Cal. May 24, 2022) (determining that a limited course of

10   treatment sometimes can justify the discounting of a claimant's subjective testimony, at least where

11   the testimony concerns physical problems).  Indeed, an ALJ is permitted to consider evidence of

12   conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d

13   742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount

14   claimant's testimony regarding severity of impairment); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th

15   Cir. 1995) (determining absence of treatment for back pain during portion of relevant period and

16   evidence of "conservative treatment" sufficient to discount claimant's testimony); *Matthews v.*

17   *Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible factors in assessing pain testimony include

18   limited treatment and minimal use of medications).  Plaintiff has not meaningfully challenged this

19   reason for discounting Plaintiff's symptoms relative to his degenerative disk disease.

20       As a third reason for discounting Plaintiff's subjective complaints, the ALJ determined that

21   Plaintiff's activities of daily living were not consistent with full disability.  AR 36.  An ALJ may

22   properly discount a claimant's subjective complaints when the daily activities demonstrate an

23   inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v.*

24   *Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages

25   in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other

26   grounds.  In discounting Plaintiff's allegations, the ALJ reasoned as follows:

27       The claimant's activities of daily living are not consistent with full disability.  For example,
         the claimant reported at his consultative examination that he cooks, cleans, and

28

10

occasionally drives.  He stated that he shops and performs his activities of daily living without assistance.  (10F/3)  At a liver transplant evaluation in January 2019, he reported that he was independent with his activities of daily living, drives, tries to walk on a daily basis, and that his daily activities include fixing things around the house.  (15F/82)  He traveled to Mexico, reporting in October 2018 that he just returned from a trip to Mexico.  (17F/30)  The claimant told his providers that he walked from 15-25 minutes per day.  (15F/75, 114)  The claimant's range of activities indicate that he is not fully disabled.

AR 36.

Plaintiff contends that in finding he was able to perform activities of daily living without assistance, the ALJ failed to explain how the ability to perform some activities, on a modified basis, was inconsistent with his complaints of fatigue.  (Doc. 20 at 14.)  However, the ALJ reasonably determined that Plaintiff's range of activities, which Plaintiff does not dispute and included driving, walking, traveling to Mexico, and completing various chores, were inconsistent with his allegations of full disability. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (ALJ reasonably determined claimant's activities, which included grocery shopping with assistance and completing various chores "in short increments due to pain," were inconsistent with alleged severity of limitations).  Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.

Plaintiff additionally maintains that the ALJ failed to consider the effects of fatigue altogether.  (Doc. 20 at 14.)  To that end, Plaintiff argues that the ALJ failed to account for any limitations resulting from his fatigue or provide any reason for discounting the complaint  (*Id.*)  However, in developing Plaintiff's RFC, the ALJ considered Plaintiff's testimony that he has "fatigue from his liver issues."  AR 33.  The ALJ also found persuasive the prior administrative medical findings of Dr. A. Pan, who assessed that Plaintiff's statements regarding fatigue were only partially consistent with the evidence based on his activities of daily living.[7]  AR 36 ("Dr. Pan stated the claimant has no problems with activities of daily living, does household chores, shops, but tires

---

[7] Prior administrative medical findings are findings made by State agency medical and psychological consultants at a prior level of review based on their review of the evidence in the record. 20 C.F.R. § 404.1513(a)(5).

easily"), 73.  While the ALJ did not make an explicit additional explanatory connection between her findings regarding daily activities and Plaintiff's fatigue, the ALJ's reason was clear and convincing regarding the alleged severity of his limitations, including those attributable to fatigue.  *See Goltz v. Comm'r of Soc. Sec.*, No. 1:23-CV-00183-SAB, 2024 WL 1311668, at *16 (E.D. Cal. Mar. 27, 2024) ("While the Court finds the ALJ could have made explicit additional explanatory connections between her findings regarding daily activities and why they were inconsistent with the Plaintiff's reported limitations, the Court finds sufficient support in the record to find the ALJ's reason was clear and convincing."); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[W]e are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

The Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints.  Even if one of the reasons for discounting those complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

### 2.      RFC and Duty to Develop the Record

Plaintiff also contends that logical errors rendered the RFC unsupported by substantial evidence, including the failure to articulate the weight given to various medical sources and relying on outdated medical opinions.  (Doc. 20 at 16-18.)

Plaintiff preliminarily argues that the ALJ had no rational basis for the RFC because "the ALJ failed to articulate the weight given to various medical sources."  (Doc. 20 at 16.)  This argument is unavailing.  Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. § 404.1520c.  Under those regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Instead, the Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 404.1520c(b)(2).  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022)   (internal citations omitted).

Here, with regard to Plaintiff's physical RFC, the ALJ considered the prior administrative medical findings from Dr. A. Pan and Dr. K. Rudito, state agency medical consultants.  AR 36-37.  On December 3, 2018, Dr. Pan opined that Plaintiff could occasionally lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, occasionally climb ramps, stairs, ladders, ropes, and scaffolds, frequently balance, and occasionally stoop, kneel, crouch and crawl.  AR 36, 73-74. The ALJ found this opinion persuasive, considering the factors of supportability and consistency, but noted additional limitations on standing/walking as of March 10, 2020, due to a meniscal tear.  AR 36.

On April 17, 2019, Dr. Rudito opined on reconsideration that Plaintiff could lift/carry 25 pounds occasionally and 20 pounds frequently, could stand/walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday, could frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, could frequently stoop, kneel, crouch, and crawl, and could frequently overhead reach on the right.  AR 36, 88-90.  The ALJ found this opinion less persuasive, considering the factors of supportability and consistency.  AR 36-37.

In addition to the prior administrative medical findings, the ALJ also considered the opinion of Dr. Roger Wagner, a consultative examiner, who opined on March 26, 2019, that Plaintiff could stand/walk up to six hours with normal breaks, sit without limitations with normal breaks, could lift and carry 50 pounds occasionally and 25 pounds frequently, could frequently climb, stoop, and

1    crouch, and could frequently reach overhead on the right.  AR 35, 37, 565-69.  The ALJ did not find

2    Dr. Wagner's opinion persuasive, considering the factors of supportability and consistency.  AR 37.

3           Plaintiff does not argue that the ALJ erred in evaluating the persuasiveness of these prior

4    administrative medical findings or medical opinions.  Instead, Plaintiff asserts that the state agency

5    physician opinion upon which the ALJ's RFC was initially based only reviewed Plaintiff's records

6    through October 2018.  Plaintiff contends that the physician was unaware of Plaintiff's worsening

7    condition, which included an increased MELD score and placement on the liver transplant list,

8    rendering the opinion outdated and triggering the ALJ's duty to develop the record.  (Doc. 20 at 17.)

9           To the extent Plaintiff challenges the record as incomplete, this issue is not properly preserved

10   for appeal.  "[W]hen claimants are represented by counsel, they must raise all issues and evidence at

11   their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111,

12   1115 (9th Cir. 1999).  Plaintiff was represented by counsel at the administrative hearing and his

13   counsel did not contend that the record was incomplete.  AR 49, 65.  Instead, Plaintiff's counsel

14   informed the ALJ that he had an opportunity to review the record and had no objections.  AR 49

15   ("ALJ:  … Have you had the opportunity to review the file?  ATTY:  I have.  ALJ:  Any objections to

16   the exhibits in the file?  ATTY:  No, Your Honor.").  Because counsel had the opportunity to raise the

17   issue of incompleteness during the administrative proceedings, any challenge on that basis is waived.

18   *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009) (determining issue waived where not argued

19   before ALJ); *Wagner v. Comm'r of Soc. Sec.*, No. 1:22-cv-01566-CDB, 2024 WL 1312214, at *8

20   (E.D. Cal. Mar. 27, 2024) (concluding issue regarding incompleteness of record waived where

21   plaintiff's counsel had opportunity to raise the issue during the administrative proceedings, but did not

22   do so); *Valdez v. Berryhill*, No. SA CV 16-0980 JCG, 2018 WL 317799, at *1 (C.D. Cal. Jan. 5, 2018)

23   (issue not properly preserved where the plaintiff was represented by counsel at the administrative

24   hearing and specifically stated he had "no objection" to the record when asked by the ALJ).

25          Even if the issue had not been waived, Plaintiff has not demonstrated any error warranting

26   remand. The ALJ's duty to develop the record further is triggered only where there is an inadequacy or

27   ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Mayes v. Massanari*, 276 F.3d

28   453, 459-60 (9th Cir. 2001) ("[a]n ALJ's duty to develop the record further is triggered only when

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").  In this instance, there is no indication that the record was ambiguous or inadequate to allow for proper evaluation. The record included Plaintiff's testimony, the prior administrative medical findings of the state agency physicians, and the opinion of the consultative examiner, all of which were summarized by the ALJ.  AR 32-33, 36-37.  And, there was no indication by Plaintiff's counsel that the record failed to include Plaintiff's complete treatment records. AR 34.  Absent any inadequacy or ambiguity in the record, the ALJ had no duty to further develop the record.  *See*, *e.g.*, *Gonzalez v. Kijakazi*, No. 1:21-cv-01676-SKO, 2023 WL 6164086, at *6 (E.D. Cal. Sept. 21, 2023) (finding ALJ had no duty to develop the record further where record contained what appeared to be plaintiff's complete treatment records and no gaps or inconsistencies were noted); *accord Findley v. Saul*, No. 1:18-cv-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding ALJ not obligated to further develop the record where counsel stated at the hearing that the record was complete).

Plaintiff argues that the ALJ's duty to develop the record was triggered based on evidence post-dating the opinions of the state agency physician, Drs. Pan and Rudito.  However, the mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record. *See*, *e.g.*, *Charney v. Colvin*, No. CV 1-7080 JC, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), aff'd, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC); *Smith v. Saul*, No. 1:19-cv-01085-SKO,  2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (concluding "updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records"); *accord Ortiz v. Saul*, No. 1:17-cv-01611-BAM, 2019 WL 4298035, at *6  (E.D. Cal. Sept. 11, 2019) (indicating ALJ's consideration of the medical evidence post-dating state agency physician's opinion was within her province in determining plaintiff's RFC).  "[T]here is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020).  Indeed, "[a]n ALJ

1   is almost always tasked with performing some independent review [of] the medical evidence that was

2   never considered by one of the state agency's [ ] physicians, and thereafter translating the same into an

3   RFC ... this is indeed the ALJ's role." *Razaqi v. Kijakazi*, No. 1:20-cv-01705-GSA, 2022 WL

4   1460204, at *7 (E.D. Cal. May 9, 2022).

5       The ALJ here considered the objective medical evidence after April 2019, which post-dated

6   Dr. Rudito's review.  AR 33-35.  This includes evidence referenced by Plaintiff concerning increased

7   MELD scores from 11 to 17, (Doc. 20 at 17, citing AR 594), and placement on the liver transplant list

8   (*id.*).[8]  *See* AR 34 ("[H]is MELD score was 13 in December 2018 (6F/2), 15 in January 2019 (11F), 16

9   in April 2019 (12F/20), 15 in July 2019 (12F/22), 17 in October 2019 (12F/23 [AR 594]), and 16 in

10  June 2020 (15F/152)"); ("The claimant was placed on the active list for liver transplantation on March

11  29, 2019, noting a MELD score of 15. (11F).").  The ALJ summarized the later treatment records, did

12  not interpret any test results directly, and properly translated and incorporated this evidence into the

13  RFC finding.  *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (internal citation omitted), ("The

14  ALJ properly relied on the opinions of three doctors from 2013. As to evidence after December 2013,

15  the ALJ properly considered all of the various types of evidence in the medical record, including

16  objective evidence such as x-rays, Bufkin's treatment history, and clinical findings, and properly

17  translated and incorporated this evidence into an RFC finding."); *Smith*, 2020 WL 6305830, at *9

18  (finding ALJ properly interpreted evidence post-dating state agency physicians' opinions, as charged

19  to do, and formulated RFC).

20      Plaintiff asserts that because no physician reviewed evidence that his "MELD scores increased

21  (AR 578, 594), his albumin, creatinine and bilirubin levels worsened, (AR 479-83, 580, 576, 573,

---

[8] Plaintiff also argues that the "opinions of the reviewing doctors date back to before pain management was initiated, (AR 482-83) before the failed response to epidural injections (AR 478, 464), and before the requirement of escalating pain medications.  (483, 471, 464)." (Doc. 20 at 17.)  This argument is unsupported by Plaintiff's cited evidence.  The cited evidence does not relate to pain management.  Rather, it includes lab results (AR 482-83), follow-up treatment regarding liver cirrhosis (AR 478), part of Social Security form SSA-827 (AR 464), and a statement from Altura Centers for Health indicating they do not have any records for Plaintiff (AR 471).

755), and he was placed on a transplant list (AR 733)," the ALJ erred by interpreting medical data on her own.  (Doc. 20 at 18.)  The Court disagrees.

Although Plaintiff asserts that no physician reviewed evidence of his varying MELD scores, his worsening albumin, creatinine, and bilirubin levels, and his placement on a transplant list, this assertion is not persuasive.  As to the MELD scores, Plaintiff cites to a score of 17 in October 2019.  (Doc. 20 at 18, citing AR 594).  Yet, additional records cited by Plaintiff demonstrate fluctuation in these scores, including a subsequent MELD score of 16 in April 2020.[9]  (*See*, *e.g.*, Doc. 20 at 18, citing AR 755.)  According to the record summarized by Plaintiff, his MELD score also was 16 on March 18, 2019, at which time his treatment provider described the score as "low at this point" and indicated that Plaintiff was "doing well."  AR 710-15; *see also* Doc. 20 at 7 ("His MELD score was now 16.").  Notably, this MELD score of 16 was recorded *before* Dr. Wagner's March 26, 2019 evaluation, in which he opined, as noted by the ALJ, that Plaintiff "appears to be relatively well compensated" with regard to his cirrhosis.  AR 35, 569.  This MELD score of 16 also was recorded *before* Dr. Rudito's April 17, 2019 prior administrative medical findings, which included reference to Dr. Wagner's opinion.  AR 88-90.

As to the albumin, creatinine, and bilirubin levels, Plaintiff's own citations to the medical record show that these levels did not "worsen," but rather fluctuated over time.  *See* AR 479-83 [December 2018:  albumin 2.6, bilirubin 2.8, creatinine .72], 580 [March 2019:  albumin 2.9, bilirubin 4.2, creatinine .55], 576 [June 2019:  albumin 2.4, bilirubin 3.5, creatinine .78], 573 [September 2019: albumin 2.7, bilirubin 5.5, creatinine .60], 733 [August 2019:  albumin 2.4, , bilirubin 3.5, creatinine .78.], 755 [April 2020 -- bilirubin 4.1, creatinine .57.  Further, certain of these levels were recorded before the prior administrative medical findings of Dr. Rudito and the medical opinion of Dr. Wagner.  *See*, *e.g.*, AR 479-83, 580.

As to placement on the liver transplant, Dr. Wagner expressly noted that Plaintiff was on the transplant list but still opined that Plaintiff could stand and walk up to six hours with normal breaks,

---

[9] As discussed, the ALJ also identified Plaintiff's varying MELD scores, indicating "his MELD score was 13 in December 2018 (6F/2), 15 in January 2019 (11F), 16 in April 2019 (12F/20), 15 in July 2019 (12F/22), 17 in October 2019 (12F/23), and 16 in June 2020 (15F/152)."  AR 34.

1  sit without limitations with normal breaks, lift and carry 50 pounds occasionally and 25 pounds
2  frequently, frequently climb, stop, and crouch, and frequently reach overhead on the right.  AR 565-
3  66.
4          The record in this case thus reflects that medical evidence of Plaintiff's varying MELD scores,
5  his fluctuating albumin, creatinine, and bilirubin levels, and his placement on a transplant list was
6  considered or otherwise available to reviewing or examining physicians.  This undercuts any assertion
7  that the ALJ was required to interpret the medical data.
8          Plaintiff additionally argues that if he had been able to undergo the liver transplant when he
9  was called upon to do so (AR 904, 889), a finding of disability would have been directed under Listing
10 5.09.  (Doc. 20 at 18.)  However, Listing 5.09 establishes disability "for 1 year following the date of
11 transplantation," not any other date.  20 CFR Part 404, Subpart P, Appendix 1, Listing 5.09, §
12 5.00(D)(12).  Listing 5.09 therefore provides no basis for remand.
13                                **CONCLUSION AND RECOMMENDATION**
14         Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial
15 evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS
16 HEREBY RECOMMENDED as follows:
17         1.  Plaintiff's motion for summary judgment (Doc. 20) be denied;
18         2.  The Commissioner's request to affirm the agency's decision (Doc. 21) be granted; and
19         3.  The Clerk of the Court be directed to enter judgment in favor of Defendant Martin
20             O'Malley, Commissioner of Social Security, and against Plaintiff Maria De La Paz
21             Navarro De Rodriguez o/b/o Gilberto Rodriguez Alvarez.
22         These Findings and Recommendations will be submitted to the United States District Judge
23 assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being
24 served with these findings and recommendations, the parties may file written objections with the
25 Court.  The document should be captioned "Objections to Magistrate Judge's Findings and
26 Recommendations."  The parties are advised that the failure to file objections within the specified time
27 may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.
28

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 26, 2024**                          /s/ *Barbara A. McAuliffe*
                                             UNITED STATES MAGISTRATE JUDGE